**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MICHAEL CARTMILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-CV-305-GKF-FHM |
| ) | |
| UNITED PARCEL SERVICE, INC., ) | |
| a foreign corporation, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter comes before the Court on the Motion to Remand [Document No. 7] of plaintiff Michael Cartmill ("Cartmill").

Cartmill brought this action in state court, claiming that defendant United Parcel Service, Inc. ("UPS") terminated him from employment in retaliation for availing himself of his rights under the Oklahoma's Worker's Compensation Act. As a result of an internal grievance process pursuant to a collective-bargaining agreement ("CBA"), Cartmill was reinstated without compensation for time lost. UPS removed the action to federal court based on the existence of a federal question, arguing that Cartmill's claim raises issues of complete federal preemption under section 301 of the Labor Management Relations Act of 1947. Cartmill argues that the removal was improper and moves to remand.

In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), the United States Supreme Court held that an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement ("CBA"). Lingle was employed by Norge's manufacturing plaint in Illinois when she notified Norge that she had been injured in the course of her employment and

requested compensation for her medical expenses pursuant to the Illinois Workers' Compensation Act. Norge fired Lingle and Lingle filed a grievance pursuant to a CBA. The arbitrator ruled in Lingle's favor and ordered Norge to reinstate Lingle with full backpay. Meanwhile, Lingle filed a state couart action against Norge, alleging she had been discharged for exercising her workers' compensation rights.

In an Illinois workers' compensation retaliatory discharge action, a plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge; and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the workers' compensation act or to interfere with his exercise of those rights. The Supreme Court noted that each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer, neither of which requires a court to interpret any term of a collective bargaining agreement. *Id.* at 407. Furthermore, Norge's defense that it had a nonretaliatory reason for the discharge was "a purely factual inquiry" which did not turn on the meaning of any provision of a collective-bargaining agreement. *Id.* Thus, the Supreme Court concluded, the state-law remedy in *Lingle* was "independent" of the collective-bargaining agreement because resolution of the state-law claim did not require construing the collective-bargaining agreement. *Id.*

The Supreme Court agreed that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause, but disagreed that such parallelism renders the state-law analysis dependent upon the contractual analysis. *Id.* at 408. "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same

set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409-410.

> [T]he mere fact that a broad contractual protection against discriminatory-or retaliatory discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract. For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law. In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the "just cause" language of a collective-bargaining agreement.

*Id.* at 412-13.

UPS seeks to convince the Court that this is not a typical case, and that Cartmill's claim requires interpretation of the CBA. UPS argues that (1) plaintiff cannot prove his prima facie case for workers' compensation retaliation absent direct analysis of the CBA, because the issue of whether Cartmill was "discharged" cannot be resolved without examining his employment status under the CBA; and (2) that plaintiff's claim for damages requires review of the CBA. UPS also argues that since Cartmill maintained his seniority upon reinstatement, Cartmill's employment was not terminated.

In Oklahoma, the Legislature "has made the burden of establishing a prima facie case for retaliatory discharge relatively easy." *Buckner v. General Motors Corp.*, 760 P.2d 803, 806 (Okla. 1988). The discharged employee must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the workers' compensation act, and consequent termination of employment. *Id.* After a prima

facie case is established, a burden of producing relevant and credible evidence shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate non-retaliatory reason. *Id.* at 806-7. The ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remains with the employee. The employee bears the burden of persuasion that the reason give for termination was pretextual. *Id.* at 807.

The issue of whether Cartmill's employment was terminated prior to reinstatement does not require construction of the CBA. More specifically, UPS's contention that Cartmill maintained his seniority upon reinstatement after termination is irrelevant to Cartmill's state law action, which "is not rooted in [the] collective bargaining agreement." *Peabody Galion v. Dollar*, 666 F.2d 1309, 1323 (10th Cir. 1982). Cartmill's action "is based on a statutory principle in the nature of tort." *Id.* at 1323-24. The statute at issue "was intended to prohibit all retaliatory discharges related to workers' compensation claims, regardless of the existence of alternate remedies in collective bargaining agreements" and regardless of whether Cartmill maintained his seniority upon reinstatement. In *Mowry v. United Parcel Service*, 415 F.3d 1149, 1155-56 (10th Cir. 2005), UPS argued, as it does here, that "resort to the CBA is necessary to determine whether [the employee], in fact, was discharged." The Court stated that "[t]his argument is foreclosed by *Lingle* itself. *Lingle* teaches that the issue to be decided in this action–whether the employer's actions make out the element of discharge under [state] law–is a purely factual question." *Id*. at 1156. The Court further stated "[s]o long as the state law cause of action is concerned not with the employer's contractual right to discharge the employee, but rather with its motives in exercising that right, the CBA is not relevant . . . ." *Id.* In this case, as in *Mowry*, the state law claim is concerned with

UPS's motives in exercising the right to discharge. The inquiry into UPS's motives does not raise a federal question.

The basic issue to be addressed on Cartmill's state-law claim "is whether there was, or was not, a retaliatory discharge." *Marshall v. TRW, Inc.*, 900 F.2d 1517, 1521 (10th Cir. 1990). In *Marshall*, the Tenth Circuit affirmed the trial court in concluding there was no federal pre-emption since the state-law claim could be resolved without interpreting the CBA. Federal jurisdiction in *Marshall* was based on diversity of citizenship.

*Doran v. Thermatex Corp.*, 132 L.R.R.M. 3041 (N.D. Ohio 1989), discussed in *Marshall* and mentioned by UPS, is different than the instant case. In Doran, the plaintiff was terminated by the employer because his leave of absence arising from an industrial accident exceeded one year. The plaintiff brought a workers' compensation retaliatory discharge action under Ohio law. The CBA provided that an employee's "seniority" is terminated if he has one year or more seniority and "is out of service for any reason for more than one year." Plaintiff amended his complaint to include allegations that he was discharged pursuant to the collective bargaining agreement. Plaintiff interpreted the CBA to mean that after one year's absence he lost his "seniority" but not his "employment." The employer interpreted the CBA to equate "loss of seniority" to "loss of employment." The court held that the state court claim was pre-empted by federal law where the dispute turned on the interpretation of a clause in the CBA. Such is not the case here.

UPS argues that Cartmill's claim for damages requires review of the CBA because "[w]hether Plaintiff got all monetary and other contractual relief he may have been entitled to requires analysis of the contract governing his employment and that contract (the CBA) is a creature of federal law." UPS's Response, p. 3 [Document No. 8]. Insofar as Cartmill's state-law claim is

based on a statutory principle in the nature of tort, the measure of damages is governed by state tort law, not contract law. Article 52 of the CBA therefore does not determine whether Cartmill received "all monetary . . . relief he may have been entitled to . . . ." UPS's Response, p. 3 [Document No. 8]. In *Lingle*, the plaintiff was entitled to seek damages under her state-law claim for retaliatory discharge despite having been reinstated with full pay under the CBA. Cartmill, on the other hand, received no compensation for time lost in connection with his contractual claim under the CBA. Oklahoma law provides a different set of possible damages in connection with a workers' compensation retaliatory discharge claim. *See, e.g., Williams v. ABS Enterprises, Inc.*, 734 P.2d 854, 857 (Okla. Civ. App. 1987)("[D]amages for mental anguish may be recovered under [the Act] when an employee is discharged for filing a Workers' Compensation claim"); and OKLA. STAT. tit. 85, § 6 (punitive damages not to exceed $100,000.00 recoverable). UPS's argument that "[n]either Plaintiff nor any other union represented employee can get back pay or back benefits that the labor contract does not provide" is simply erroneous with respect to Cartmill's state-law claim. UPS has not shown that the issue of damages in this state-law dispute will turn on issues of federal law and/or construction of the CBA.

Upon consideration of the arguments and authorities submitted by the parties, the Court concludes that resolution of Cartmill's state-law workers' compensation retaliation claim does not require the interpretation of the collective bargaining agreement. The state-law dispute does not raise a federal question. The Court concludes that plaintiff's motion to remand should be granted.

**WHEREFORE**, the Motion to Remand [Document No. 7] of plaintiff Michael Cartmill is granted.

**IT IS SO ORDERED** this 1st day of February 2008.

*[signature]*
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma